**NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-24-0000416**
**02-JUL-2026**
**07:53 AM**
**Dkt. 71 SO**

NOS. CAAP-24-0000416, CAAP-24-0000418 and CAAP-24-0000441

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

**CAAP-24-0000416**

CROWE COMMERCIAL REAL ESTATE, LLC, WILLIAM R. CROWE, and
RICHARD M. KRYSTOFF, Plaintiffs/Counterclaim Defendants-
Appellants, and CBI, INC., dba NEWMARK GRUBB CBI,
Plaintiff/Counterclaim Defendant-Appellee,
v.
PAN PACIFIC INTERNATIONAL HOLDINGS CORPORATION, fka DON QUIJOTE
HOLDINGS CO., LTD., Defendant/Counterclaimant-Appellee, and
DON QUIJOTE (USA) CO., LTD., Defendant-Appellee

**CAAP-24-0000418**

CROWE COMMERCIAL REAL ESTATE, LLC, WILLIAM R. CROWE, and
RICHARD M. KRYSTOFF, Plaintiffs/Counterclaim Defendants-
Appellants, and CBI, INC., dba NEWMARK GRUBB CBI,
Plaintiff/Counterclaim Defendant-Appellee,
v.
PAN PACIFIC INTERNATIONAL HOLDINGS CORPORATION, fka DON QUIJOTE
HOLDINGS CO., LTD., Defendant/Counterclaimant-Appellee, and
DON QUIJOTE (USA) CO., LTD., Defendant-Appellee

and

**CAAP-24-0000441**

CROWE COMMERCIAL REAL ESTATE, LLC, WILLIAM R. CROWE, and
RICHARD M. KRYSTOFF, Plaintiffs/Counterclaim Defendants-
Appellants, and CBI, INC., dba NEWMARK GRUBB CBI,
Plaintiff/Counterclaim Defendant-Appellee,
v.

PAN PACIFIC INTERNATIONAL HOLDINGS CORPORATION, fka DON QUIJOTE HOLDINGS CO., LTD., Defendant/Counterclaimant-Appellee, and DON QUIJOTE (USA) CO., LTD., Defendant-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CC181002031)

**SUMMARY DISPOSITION ORDER**
(By: Wadsworth, Presiding Judge, McCullen and Guidry, JJ.)

Plaintiffs/Counterclaim Defendants-Appellants Crowe Commercial Real Estate, LLC (**Crowe Commercial**), William R. Crowe (**Crowe**), and Richard M. Krystoff (**Krystoff**) (collectively, **Brokers**) appeal from the "Final Judgment Entered Against [Brokers] and [Plaintiff/Counterclaim Defendant-Appellee] CBI, Inc. DBA Newmark Grubb CBI [(**CBI**)]" (**Final Judgment**), entered on May 13, 2024, by the Circuit Court of the First Circuit[1] (**circuit court**). The Final Judgment was entered in favor of Defendant-Appellee Don Quijote (USA) Co., Ltd. and Defendant/ Counterclaimant-Appellee Pan Pacific International Holdings Corporation, formerly known as Don Quijote Holdings Co., Ltd. (collectively, **DQ**).[2]

---

[1] The Honorable John M. Tonaki presided.

[2] The Final Judgment incorporated the circuit court's: (1) April 28, 2023 "Order Granting [DQ's] Motion for Summary Judgment as to [Brokers'] Contract Claims and All Claims in First Amended Counterclaim, Filed July 18, 2022 [Dkt. 253]" (**Order Granting MSJ on Contract Claims**); (2) September 14, 2023 "Order Granting [DQ's] Renewed Motion for Summary Judgment on Procuring Cause and Other Equitable Claims, Filed June 16, 2023 [Dkt. 382]" (**Order Granting MSJ on Equitable Claims**); and (3) March 22, 2024 "Order Granting [DQ's] Motion for Award of Attorneys' Fees and Costs as Prevailing Parties, Filed September 28, 2023 [Dkt. 432]" (**Order Granting Fees and Costs**).

In the underlying case, Brokers alleged that they are owed a commission for real estate brokerage services related to DQ's acquisition of the Pan Am Building (**PAB**) located in Honolulu, Hawaiʻi.  Brokers raised claims based on contract and in equity.  The parties filed cross-motions for summary judgment.  The circuit court granted summary judgment in favor of DQ, granted DQ's request for attorneys' fees and costs, and entered the Final Judgment.

In June 2024, the Brokers filed three notices of appeal.  Crowe Commercial and Crowe appealed from the Final Judgment, creating case no. CAAP-24-0000416.  Krystoff filed two separate notices of appeal, the first through counsel creating case no. CAAP-24-0000418, and the second as a self-represented litigant creating case no. CAAP-24-0000441.  This court consolidated the appeals under case no. CAAP-24-0000416.

Brokers assert three points of error on appeal, contending that the circuit court erred by: (1) "granting summary judgment on procuring cause and equitable claims when there were clearly genuine issues of material fact"; (2) "granting summary judgment on contract claims when there were clearly genuine issues of material fact"; and (3) "awarding attorneys' fees and costs against [Brokers] jointly and severally without properly apportioning the award or properly scrutinizing [DQ's] claimed fees."

Upon careful review of the record, briefs, and relevant legal authorities, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Brokers' points of error as follows[3]:

(1) Brokers contend that the circuit court erred in granting summary judgment in favor of DQ on the breach of contract claims.  Brokers point to the Letter of Intent (**LOI**), and the related correspondence between Brokers and DQ, as evidence of an implied contract between the parties.

We review the circuit court's grant of summary judgment de novo, applying the following standard,

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.  The evidence must be viewed in the light most favorable to the non-moving party.  In other words, we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.

Ralston v. Yim, 129 Hawaiʻi 46, 55-56, 292 P.3d 1276, 1285-86 (2013) (citation omitted).

Brokerage agreements are governed by the statute of frauds, and must generally be in writing.  See Hawaii Revised

---

[3]    We reorder Brokers' points of error herein.

Statutes (**HRS**) § 656-1(6) (2016).[4] Brokers contend that "[a] binding and enforceable contract was formed in 2015 when DQ's principal executed the LOI which expressly guaranteed [Brokers] a commission and confirmed that DQ would ensure that the Seller paid this commission in any completed transaction." The LOI is not a contract between Brokers and DQ. It is a letter, signed by Naoki Yoshida (**Yoshida**), Don Quijote Holdings Co., Ltd.'s Senior Managing Director, which expressed DQ's offer -- made through Brokers to the prospective seller, i.e., Pacific Office Properties, Trust, Inc. (**POP**) -- to negotiate a Purchase Agreement for the PAB.

For there to be an enforceable agreement, there must be a meeting of the minds between the parties on all essential terms. Moloaa Farms LLC v. Green Energy Team LLC, 157 Hawaiʻi 175, 190-91, 575 P.3d 808, 823-24 (2025) (quoting United Pub.

---

[4]     HRS § 656-1 states, in pertinent part,

No action shall be brought and maintained in any of the following cases:

. . . .

(6)   To charge any person upon any agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or commission;

. . . .

unless the promise, contract, or agreement, upon which the action is brought, or some memorandum or note thereof, is in writing, and is signed by the party to be charged therewith, or by some person thereunto by the party in writing lawfully authorized.

Workers, AFSCME, Local 646 v. Dawson Int'l, Inc., 113 Hawaiʻi 127, 141, 149 P.3d 495, 509 (2006)).  The following provisions of the LOI make clear that the parties did not intend the LOI to memorialize an enforceable agreement between DQ and POP, or to establish an implied contract between DQ and Brokers:

> 8.  Exclusive Dealings.  Seller shall not solicit other offers or negotiate with any third party concerning the acquisition of the [PAB] or any portion thereof until this LOI is terminated.
>
>     . . . .
>
> 13. Brokers.  [DQ] and Seller acknowledge that [Brokers] represent [DQ] and shall be paid a commission by Seller equal to two percent (2%) of the Purchase Price or any consideration for the property including assumption of debt in whole or part plus GET tax thereon, at the Closing. Seller is not represented by a broker or real estate agent but by an attorney of choice.  The parties agree that no other brokers or finders are entitled to a fee by reason of this transaction.
>
>     . . . .
>
> 15. Non-Binding.  Except for the provisions of Sections 6 (Due Diligence Documents), 8 (Exclusive Dealings) and 14 (Confidentiality), **this LOI is intended by Seller and [DQ] to be a non-binding letter that expresses the parties' current intention**.  Except for the provisions of Sections 6 (Due Diligence Documents), 8 (Exclusive Dealings) and 14 (Confidentiality), neither Seller nor [DQ] shall be legally bound or obligated to perform with respect to the subject matter of this LOI, under any legal theory, prior to the execution and mutual delivery of the Definitive Agreement. Such document alone shall govern the respective rights and obligations of the parties.  Without limitation of the foregoing, neither Seller nor [DQ] shall make a claim under this LOI or a claim against the other based on "part performance", [sic] "detrimental reliance", [sic] "good faith", [sic] or any other similar claim.  Either party may withdraw from negotiations of the Definitive Agreement at any time in such party's sole discretion without any liability.
>
>     . . . .
>
> 17. Duration of Offer.  This LOI shall remain open for Seller's acceptance until May 29, 2015 at 5:00 p.m. (Hawaii Standard Time), or such later time as determined by [DQ]. If a signed acceptance is not returned by the date and hour

specified above or a later date as determined by [DQ], this LOI shall be deemed null and void unless extended in writing by [DQ].

. . . **While the parties intend to proceed promptly to complete and execute the Purchase Agreement, it is expressly understood that this is a [LOI] only, and no liability or obligation of any nature, including the obligation to negotiate in good faith, is intended to be created between the parties hereto.** Either party may terminate negotiations at any time in their sole discretion.

Should the above general terms and conditions be acceptable to you, please acknowledge your approval and acceptance below. [DQ's] offer shall remain open for Seller's acceptance up to [5:]00 p.m. (HST) on May 29, 2015.

(Emphasis added.)

The LOI, by its express terms, was a non-binding letter of intent to engage in negotiations for DQ's purchase of PAB, with the understanding that the LOI would be "null and void" unless accepted by May 29, 2015 at 5:00 p.m., and that "[e]ither party may terminate negotiations at any time in their sole discretion."

The evidence introduced by Brokers also shows that the parties understood the LOI to be non-binding. In a May 24, 2015 email, Yoshida asked Brokers to confirm the following:

1. [DQ] is not obligated to pay any broker fee for this transaction.
2. The price will not be stated in this LOI.
3. This LOI is non binding what so ever [sic].

Krystoff responded by reassuring Yoshida that the LOI was non-binding and did not obligate DQ to pay any brokerage fees:

> Regarding your comments on the LOI, please see below:
>
> **[Yoshida's] Q1: Buyer is not obligated to pay any broker fee for this transaction.**
> [Krystoff's response:] The LOI specifically states that the brokerage fee is to be paid by the Seller (as would any Definitive Agreement).  Should this be disputed by the seller, we would look to DQ to protect our brokerage position by making it clear to the Seller that the transaction can only be closed, with the brokerage fee being paid out of the Seller side of the transaction.
>
> . . . .
>
> **[Yoshida's] Q3: This LOI is non binding what so ever** [sic].
> [Krystoff's response:] Paragraph 15 of the LOI states that the LOI is non-binding.  There is no binding contract unless and until the definitive agreement is fully executed by the parties.

Yoshida signed the LOI upon receiving Krystoff's reassurances.  Krystoff emailed the signed LOI to Lawrence Taff (**Taff**),[5] POP's then-Chief Financial Officer, on May 26, 2015.  Taff summarily rejected the unsolicited LOI on behalf of POP, informing Krystoff: "[W]e believe that the value of our holdings is maximized by looking at all of our buildings together.  Selling/disposing of the Pan Am asset individually would be very disadvantageous from a tax perspective as well."  By its own terms, the LOI expired upon POP's rejection of the LOI.

The record reflects that there was no enforceable brokerage agreement between Brokers and DQ.  We therefore affirm the Order Granting MSJ on Contract Claims.

---

[5]    Taff testified in a deposition that PAB had been purchased in 2003 by five individuals: Jay Shidler, Jim Reynolds, Matthew Root, Jim Ingebritsen, and Taff.  These five individuals created POP, contributed their interests in the PAB to POP, and held interests in POP.

(2) Having concluded that the circuit court did not err by entering summary judgment on Brokers' contract claims, we turn to Brokers' "equitable claims." They identify only one such claim. Brokers contend that the record reflects a genuine issue of material fact as to whether Brokers were the "procuring cause" of the real estate transaction and are therefore entitled in equity to a brokerage commission. DQ contends that summary judgment was appropriate because "[Brokers] failed to raise a triable issue on their equitable claims, as their own evidence does not establish Brokers as the procuring cause." (Formatting altered.)

In Trent Trust Co. v. MacFarlane, the Supreme Court of the Territory of Hawai‘i explained that a broker could be entitled to a commission as the "procuring cause" of the real estate transaction. 21 Haw. 435, 439 (Haw. Terr. 1913) ("[I]f the broker procures a prospective purchaser he cannot be deprived of his commissions by the termination of his agency by the principal even though the sale is not consummated until afterwards, provided he was the procuring cause of the sale[.]"); see also Lundburg v. Stinson, 5 Haw. App. 394, 402, 695 P.2d 328, 335 (App. 1985) ("[P]rocuring cause" requires more than initial contact, and "there can be only one 'procuring cause'" for a transaction. (citations omitted)).

As discussed in section (1), supra, where a broker brings an action to recover compensation or commission relating to a real estate transaction, the statute of frauds requires that the agreement "authorizing or employing [the] agent or broker to purchase or sell real estate for compensation or commission" is in writing.  HRS § 656-1(6).

We acknowledge that Hawai‘i case law provides an exception to the general rule requiring that brokerage agreements be in writing.  In Hamilton v. Funk, the Hawai‘i Supreme Court recognized an exception where a purchaser "should have reasonably expected that the oral agreement" to pay an agreed-upon commission "if [the broker] produced a ready, willing and able buyer would induce and did induce [the broker's] actions in bringing the property to the purchaser[']s attention and in steering them to it," such that "injustice can be avoided only by enforcement of the promise."  66 Haw. 451, 453, 666 P.2d 582, 583 (1983) (citation omitted).  In Hamilton, the court thus directed that, where necessary to avoid injustice, courts could exercise their discretion to enforce a promise to pay an agreed-upon compensation in exchange for real estate brokerage services, even if the agreement had not been committed to writing.  Id.

The record reflects no agreement -- even one that was oral and/or implied -- between the Brokers and DQ.  The LOI,

which was a letter expressing DQ's interest in negotiating the purchase of the PAB from POP, is not and does not provide evidence of an agreement between Brokers and DQ. We therefore conclude that the statute of frauds was not satisfied, and that the narrow exception set forth in Hamilton does not apply here.

We affirm the circuit court's Order Granting MSJ on Equitable Claims.

(3) Brokers contend that the circuit court erred in awarding DQ attorneys' fees pursuant to HRS § 607-14 (2016), which permits a prevailing party to recover such fees "in all actions in the nature of assumpsit." We review a circuit court's award of attorneys' fees under the abuse of discretion standard. Maui Tomorrow v. Bd. of Land & Nat. Res., 110 Hawaiʻi 234, 242, 131 P.3d 517, 525 (2006).

HRS § 607-14 allows for the recovery of attorneys' fees, in an amount not to exceed twenty-five percent of the judgment, by a prevailing party in actions in the nature of assumpsit. In determining if an action is in the nature of assumpsit, the court should look to the "facts and issues raised in the complaint, the nature of the entire grievance, and the relief sought." Leslie v. Est. of Tavares, 93 Hawaiʻi 1, 6, 994 P.2d 1047, 1052 (2000) (citation omitted). Here, the circuit court did not err in determining that Brokers' claims were in the nature of assumpsit because Crowe Commercial, Crowe,

11

and Krystoff all specifically requested monetary damages in the form of a commission.[6]

Moreover, the circuit court did not err by not apportioning the fees award. In awarding fees in a case involving assumpsit and non-assumpsit claims, a court must, if practicable, apportion fees between the assumpsit and non-assumpsit claims. Blair v. Ing, 96 Hawaiʻi 327, 332, 31 P.3d 184, 189 (2001). However, if the assumpsit and non-assumpsit claims are "inextricably linked" -- i.e., if it would be "impracticable or impossible to apportion fees" -- the court may decline to make an apportionment. Au v. Funding Grp., Inc., 933 F. Supp. 2d 1264, 1272 (D. Haw. 2013) (quoting Blair, 96 Hawaiʻi at 333, 31 P.3d at 190).

Brokers' breach of contract and "procuring cause" claims were in the nature of assumpsit, as discussed supra, and in any event, were "inextricably linked" as both claims requested damages based on an alleged contractual or quasi-contractual obligation. On this record, we conclude that the circuit court did not abuse its discretion by declining to apportion the fees.

---

[6]     Crowe contends that he assigned his rights to a commission to Crowe Commercial, and should therefore not be held liable for fees and costs in his individual capacity. Crowe's contention lacks merit. The record reflects that Crowe requested that the circuit court award damages to him if it found that the assignment was not valid.

For the foregoing reasons, we affirm the Order Granting MSJ on Contract Claims, the Order Granting MSJ on Equitable Claims, the Order Granting Fees and Costs, and the Final Judgment.

DATED: Honolulu, Hawai'i, July 2, 2026.

On the briefs:

Peter Knapman,
for Plaintiffs/Counterclaim
Defendants-Appellants Crowe
Commercial Real Estate, LLC
and William R. Crowe.

John S. Edmunds,
for Plaintiff/Counterclaim
Defendant-Appellant
Richard M. Krystoff
in CAAP-24-0000418.

William M. Harstad,
for Defendant-Appellee and
Defendant/Counterclaimant-
Appellee.

Richard M. Krystoff,
Self-represented
Plaintiff/Counterclaim
Defendant-Appellant
in CAAP-24-0000441.

/s/ Clyde J. Wadsworth
Presiding Judge

/s/ Sonja M.P. McCullen
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge